and to the people of the state of Illinois, I believe that Justice Ducolosi v. Roberto Cardoza-Valdez-Avalos appellate by Kenneth Hogan. Mr. Hogan. Thank you. May it please the court, my name is Kenneth Hogan, attorney for Mr. Valdez-Avalos, the petitioner in the post-conviction proceedings under review here. Defendant seeks reversal of the trial court's denial of his post-conviction petition, the denial after an evidentiary hearing, which sought to vacate his conviction for the class one felony offense of unlawful delivery of a controlled substance. That conviction was entered after his plea of guilty in June of 2007. Mr. Valdez-Avalos alleges that he received affirmative misadvice from his counsel in the guilty plea proceedings, that his guilty plea would not cause him to be deported. Subsequently, however, in late 2010, Mr. Valdez-Avalos received notice from the Department of Homeland Security that it was seeking to remove him from the United States based on the 2007 guilty plea. Now, the defendant is a permanent legal resident of the United States. He came to the United States in 1991. He has a wife and two children here in the United States. Apart from the charges involved in this case, he has no criminal history. As I said before, in June 2017, he did plead guilty to the class one felony offense of unlawful delivery of a controlled substance. It was in exchange for an agreed sentence of 48 months of probation plus the payment of fines and costs. Mr. Valdez-Avalos successfully completed that probation in June of 2011. The trial judge did accept, after an evidentiary hearing, after hearing Mr. Valdez-Avalos' testimony, the testimony of an Iroquois County Sheriff's Deputy who was involved in the arrest, he did determine that his counsel in the guilty plea proceedings had provided him with deficient advice, accepted as true the defendant's claim that she did not tell him, or that she did affirmatively tell him, rather, that he would not be deported if he plead guilty and complied with the conditions of probation. The parties agreed that this would constitute deficient performance under the U.S. Supreme Court's decision to deal. The parties also agreed that the trial court then applied the wrong test for strickland prejudice in this case. The trial court applied a, or articulated the test as whether or not Mr., the defendant, if he had pled, rather, persisted in his not guilty plea and went to trial, whether he would have been, whether he would have likely prevailed in a trial, a subsequent trial, rather than the Hill versus Lockhart test, which is whether or not, had he not received deficient advice, whether or not he would have pled guilty or insisted on going to trial. The trial judge, in making his various findings of fact, seemed, certainly, makes the statement at one point that, asked the rhetorical question, why would the defendant plead guilty knowing it would cause his deportation? It would seem that the trial court had applied the correct test. It would have made the finding that, indeed, he had suffered strickland prejudice. But if he would have not pled guilty, had a trial, then convicted, he's deported anyway, right? That is correct. That is correct. I'm trying to remember, Padilla, was there, did Padilla have a defense? No, that's not discussed at all, Padilla, because it was on this very narrow question of whether or not that this was deficient performance. The court simply doesn't address the, like the prejudice. And whether he had a defense would go to the prejudice prong, right? I'm sorry, Your Honor? Well, whether, I mean, as you say, you and your opponent here disagree about what constitutes prejudice. That's correct. All right, I'm sorry. Well, I could point to this court's decision in Guzman, which states that, in the context, in this Padilla context, that the prejudice requires the defendant to show only that he rationally could have gone to trial, you know, and not likely acquittal at trial. Now, the strength of the state's case, may play some role in that calculus, certainly. But unlike the normal guilty plea case, where we're determining whether or not the person received ineffective assistance in the guilty plea proceedings, where that determination is, that factor is quite probative. Here we have this, the dire consequences, the dire immigration consequences, which... Most people think going to prison for 15 or 30 years is a pretty dire consequence, too. True. So why a different, well, what is it about this that you get a different standard? Well, the U.S. Supreme Court has noted that, you know, in some cases, the immigration consequences are the preeminent consideration to someone who's not a citizen of the United States, that they outweigh. Any jail sentence, or any prison sentence in this case. INS versus St. Cyr. And in this case, there are... It's not to say that Mr. Velazquez has no chance that going to trial would be foolhardy in this case. The state's case is not airtight by any stretch of the imagination. There was a control by, in this case, and this is a drug transaction, there was a control by. However, the state's evidence is not without its defects here and certainly the defendant could have, and apparently the trial judge in the post-commission proceedings thought he could have rationally made the decision to go to trial when he asked that question. Why would he plead guilty knowing it would cause his deportation? In the state's evidence here, the control by is there was a confidential source was sent into the target home, which was the defendant's home. The state doesn't know who was all in the building. The state, the confidential source had audio and video equipment, but the audio, we don't have any idea what was recorded. That was never transcribed. It was in Spanish and no one could testify to that. Also, the video portion, the most that can be made out of that is the trial judge's observation that it appeared someone who resembled the defendant was using cocaine. There's no question that the DVD involved here doesn't capture the cocaine for money transaction. That's the basis of the state's charges. And also, the state elected not to recover the marked money that was used in this transaction so as not to compromise its source at the time. So, Mr. Valdez-Avalos's decision here was not a question of whether or not he was just going to go to trial and hope that somehow, one in a million chance that he would be acquitted. There was some reasonable expectation that he might be able to convince a jury that there was reasonable doubt. The other factors involved here, I think they're relevant and they were mentioned by the trial court, that he had been here. This is not someone who had just come to the United States. He had established a life here, has a family here. And his testimony that, in fact, he would not have pled guilty if he had known that it would result in removal proceedings was supported by the fact that deportation was a concern from him at the time of the guilty plea proceedings. It wasn't something that is only a concern now after he received a notice. So, don't you see that it is problematic that he acknowledges that the trial judge asked him and told him that he could be deported? Right. Certainly, that's another circumstance that I don't think Illinois Revealing Court has dealt with in this particular scenario. The trial judge did offer a paraphrase of section 113-8's admonition, quote-unquote, that if he, he was telling this to an interpreter to tell the defendant, and that was that if he is not a natural citizen of the United States, pleading guilty to this crime could cause him to be deported or could prevent him from becoming a citizen of this country. Now, of course, a trial court's admonitions are not to be considered a mere formality or certainly, a defendant is not to simply ignore them. However, when there is a specific affirmative misrepresentations of counsel and the admonition does not specifically address that erroneous, those misrepresentations, that erroneous advice, then the admonition does not cure, does not wipe from the mind the misrepresentations that were given to the defendant by counsel. How did the admonitions that the court gave not counterbalance the inaccurate advice of counsel? Well, on the one hand, we have counsel saying, you, Roberto, will not be deported if you plead guilty to this offense and you comply with the conditions of probation. And then we have this rather general paraphrase which says, if you plead guilty to this, you might be deported, you might not become a citizen of the United States and Roberto's concern was being deported. It's a general admonition and it does not specifically contradict the reassurances he was given by his counsel. That takes us out of, I believe, out of the general rule. The lawyer says you won't and the judge says you might be deported. Right. Doesn't his attorney say that in so long as you comply with the probation and don't get into any trouble? I thought I read that several times. That is correct. And I would refer the court to People v. Hall, the Supreme Court, Illinois Supreme Court decision from 2005 where the defendant was told he didn't have a defense based on, it was an aggravated kidnapping charge that he told his counsel that he did not know that there was this infant in the back seat. He was told by his counsel that that lack of knowledge was not a defense to the charge. And during the guilty plea colloquy, the elements were read out and the Illinois Supreme Court said that that admonition to the defendant that knowledge was an element of the offense did not negate his counsel's specific and erroneous advice. You've asked us to look at Guzman, but in Guzman, the trial court did not give the admonishments. That's correct. So this case is a little bit different. It is a little bit different, certainly, since that was how the, although the case was still in terms of strickland prejudice and the inquiry still comes down to what would the, if the defendant had known that this would cause him to be deported, would he have persisted in the guilty plea or not? And in Guzman, this court didn't even consider the strength of the state's case in determining that, yes, the dire consequences, the dire immigration consequences are enough that he would risk, and in that case, it was also a class one felony. That was the issue. But there was nothing to counterbalance. The admonitions by the court did not occur in Guzman. No, that is true. There was no curative effect, couldn't even be argued. It, true, that there was no curative effect of an admonition there. And I, that is correct. However, like I said here, the curative, whatever curative effect those admonitions would have in a normal case where counsel simply did not advise, did not advise the defendant of the immigration consequences, that's not the case we have here. We have specific affirmative misrepresentations that particularly address the defendant's immigration concerns before he goes to the guilty plea. Thank you. Mr. Hogan, Mr. Nicolosi. Thank you. Thank you. Good afternoon, your honors. May it please the court. May it please counsel. Jumping right into prejudice, I guess that's the hot button topic here. The people, three or four statements to comment on. But first and foremost, as Justice Schmidt, you alluded to, the people submit that the defendant here has not established that he definitely wouldn't have pled guilty if he hadn't been improperly advised by counsel. I'd like to direct this court to People v. Risley, which I cite in my brief, a Supreme Court case, which says simply that a blanket statement that a defendant wouldn't have pled guilty isn't sufficient to establish prejudice in cases such as this. In fact, that's all the defendant did. He just points to the fact that deportation was a risk and that counsel mentioned the trial judge's statement that his rhetorical comment, why would a defendant, knowing that deportation was a risk, plead guilty? As Justice Schmidt pointed out, that just because deportation is the possible result doesn't differentiate this case from all the cases where prison, maybe an extended prison sentence, is a consequence that he wasn't informed of that was ultimately levied. That is also very significant to a person in everyday life who may not have deportation issues. And in Risley, that wasn't a deportation case, but looking at the circumstances there, the defendant, Risley, never alleged he was innocent. The defendant, Risley, didn't allege any plausible defenses. And the defendant, Risley, he gave a sworn admission committing to the crime. Here, we don't have necessarily a sworn admission, but what we do have is the defendant's testimony at the evidentiary hearing. He testified that he told counsel that he was guilty for what he did in this case. I mean, that's maybe not a sworn admission to committing the crime, but that's about as close as you can get. Further, the defendant here, he never contended he was innocent. There's no, there's just no. Well, I mean, he pled, but this was a little different than Risley because this was a negotiated, wasn't Risley, I mean, you know, and I think even as Justice Schmidt alluded to, when you're talking an open plea, yes, I mean, you know, everything's out there. Anything can happen, but when you have a negotiated plea, you know, the prison term or those things are finite in nature, that you know what you're getting, you know, from A to Z. Isn't that the real difference here and what the appellant is saying about the trial court applying the wrong standard, that that isn't the standard, whether or not he would have a likelihood of prevailing at trial, but the prejudice occurred in taking the plea, having the incorrect information. Yeah, Your Honor, the people conceded in the brief that the wrong standard was applied, no question about it, but, oh, I had something really good. Oh, I just, I hate when that happens. Oh, no. And it's more often now happening to me than I'm sure it happened to you. It was piggybacking on a comment that Justice Wright made during counsel's, oh, yeah, I guess I would have gotten your benchmark. The fact that the trial judge properly admonished the defendant with, under 725 ILCS 5-113-8, regarding the risks of deportation, the people would submit that the defendant was present for that, his translator translated that, he said he understood that, and the case of People v. Reddons, an appellate court case, says that the defendant who listens to this and basically says he understood this admonishment can't conveniently state that he never heard it or that it doesn't apply to him, regardless of what his counsel said. The fact is the trial judge told him that this was a risk, and he pled guilty, Your Honor, Justice O'Brien, knowing that this was a risk, and regardless of open plea, closed plea, the fact is he knew what the possibilities were, and he went forward with his plea, and going back to my argument on Risley, the fact is that the defendant here didn't really have a plausible defense or a claim of innocence. The Iroquois County investigator testified that his informant went into defendant's house, defendant's house, went in there, that there's videotape, clearly the quality wasn't perfect, but the fact is the investigator testified that he saw defendant clearly on the tape possessing cocaine, and the fact is that the informant came out and he had what tested positive for cocaine. The people would submit that's very, very strong circumstantial evidence of the charged offenses here. So the people would submit that, considering all of that, the fact is that he really didn't have a lot to stand on when it comes to his argument that he wouldn't have pled guilty. People would also submit, actually I think I'm just gonna wrap it up right there. In conclusion, the people submit that the trial judge did not err in dismissing or denying defendant post-conviction relief. If there are any other questions, I'd be happy to entertain them. Nope. Thank you, Mr. Nicolosi. Mr. Hogan, any rebuttal? Yes. With respect to the defendant not having any plausible defenses, again, I guess we're getting back to a standard by which he has to show that he would prevail at trial. And that's just simply not the case. And certainly, the fact that the state certainly may have a strong case here, but it is not without defect. And it is unbelievable that the defendant would not risk the possibility of conviction in order for a possibility of being able to stay here in the United States with his family. Talking about the, for instance, the DVD not being perfect. Well, it's far from not being perfect. It didn't capture the offense, which is I imagine what the aim was. It doesn't capture the transaction of cocaine for money. And with respect to the admonition, again, the admonition is somewhat general. But it defeats this plausibility, not of innocence, but of ignorance. He can't claim ignorance because the court made him aware of it. And we don't understand why. It made him aware of. Those admonishments by the court are directory. But when the court gives them, there has to be an effect that should be recognized. And that is it may override any inaccurate advice that counsel gives. And tell me or convince me why what the court says shouldn't carry more import than what the defense attorney says behind closed doors. Because he was told specifically, you will not be deported. And he's been told by the judge, if you plead guilty, you could be deported. You could not be, you might be prevented from becoming a citizen of the United States. There may be some sort of, in other words, I think a reasonable interpretation is that there may be some adverse immigration consequences. And perhaps one of those would be not becoming a citizen of the United States. But Roberto was concerned about being deported. And he was told by his defense counsel in response to his concerns immediately after retaining this person that he would not be deported as long as he complied with the terms and conditions and standard of trouble. So with that, if there are no other questions, I would simply ask this court to reverse the trial court's denial of the post-conviction relief and allow Mr. Valdes-Avalos to go ahead and face this class one felony offense so that he can stay in the United States. Thank you. Okay, thank you both for your arguments here this afternoon. Matter will be taken under advisement. A written disposition will be issued. Right now, the court will be in a brief recess for the panel seats. Thank you.    Thank you. Thank you. Thank you. Thank you. Thank you.